UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LILLIAN M. O'NEAL,**
Debtor

Chapter 13
Case No. 07-13554-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Relief from the Automatic Stay filed

by J. Douglas LiBassi ("LiBassi").  Pursuant to his Motion, LiBassi seeks relief from the

automatic stay imposed by 11 U.S.C. § 362(a) to continue a contempt proceeding pending

in the Suffolk County Probate and Family Court, Department of the Trial Court.  The

Debtor opposed the Motion.  The Court heard the Motion and the Debtor's objection on

September 27, 2007 and took the matter under advisement.

The material facts necessary to decide the issue, while convoluted, are not in

dispute.  Most can be ascertained from exhibits submitted without objection by the parties.

Neither party requested an evidentiary hearing.  Accordingly, the Court now makes its

findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

### A. Background

The Debtor filed a Chapter 13 petition on June 6, 2007.  Prior to the commencement

1

of her bankruptcy case, she was embroiled in litigation with her brother, Edward Morgan ("Edward"). The genesis of that litigation is set forth in a Memorandum of Decision issued by the Probate Court on July 31, 2007. *See* <u>O'Neal v. Morgan</u>, No. 99E 0035, Slip Op. (July 31, 2007). A summary of the findings and rulings of the Probate Court contained in that decision provide a necessary perspective for determination of the Motion for Relief from Stay and are reproduced below.

In the late 1990's, Edward entered into two agreements with his elderly parents, Olive and Arthur Morgan, which were designed to assist them in overcoming financial difficulties and other issues surrounding ownership of their home located at 54 Hollander Street, Roxbury, Massachusetts. The first agreement was a purchase and sale agreement pursuant to which Edward agreed to purchase the Morgans' two-family home of over fifty years, which was in need of repairs, for $100,000. The second agreement, which was not reduced to a writing, provided that the Morgans could live rent free in the home for the rest of their lives, in their choice of either the first or second floor unit, in exchange for Edward's use of approximately $60,000 for repairs to the property. Additionally, Edward agreed to establish and administer a trust, funded by $15,000 in proceeds from the sale, for his parents' benefit.

Although Edward was able to perform some of his commitments to his parents, the Debtor interfered, preventing her parents from carrying out their part of the agreements. On June 8, 1999, the Debtor filed a complaint in equity against Edward on behalf of her parents. The Probate Court eventually determined that her complaint against Edward was

2

"baseless" and "made without basis and with reckless disregard for the truth." O'Neal v. Morgan, No. 99E 0035, Slip Op. at 2.

After trial, the Probate Court, on January 22, 2002, issued its judgment. It dismissed the Debtor's complaint with prejudice and directed that Edward be paid $15,000 plus interest from the escrowed proceeds of the sale of the Morgans' property. These funds were to be held by Edward, as trustee for his parents, and distributed for their benefit with any remaining sums to be delivered by Edward to the administrator or executor of estate of the parent who died last. Pursuant to the judgment, the balance of the escrowed proceeds were to be placed in a separate bank account in Edward's name and used for the maintenance, repair and rehabilitation of the property and payment of the mortgage, taxes and insurance.

For purposes of the Debtor's Chapter 13 bankruptcy case, the Probate Court granted judgment to Edward, as plaintiff-in-counterclaim, against the Debtor in the sum of $32,630 for "lost rent and rent needlessly incurred by the plaintiff-in-counterclaim." Additionally, it enjoined the Debtor "from withdrawing, transferring, encumbering or otherwise depleting the assets contained in her Thrift Savings Plan established through the United States Postal Service, until such time as all sums owed to the plaintiff-in-counterclaim under this judgment have been paid in full." Id. at 4.

The Probate Court, as a further component of its judgment, provided a mechanism for determination and payment of attorney's fees incurred by Edward who was represented by LiBassi. The Probate Court authorized LiBassi to submit an "itemized

affidavit" of his time on or before February 4, 2002 and scheduled a hearing for February 12, 2002 in the event he failed to do so.

LiBassi was temporarily suspended from the practice of law on February 27, 2002, approximately one month after the Probate Court issued its judgment.  The Debtor opposed the award of attorney's fees to LiBassi because he had been charged with using funds, which were to be held for the parties in escrow, for his own purpose.  In a May 13, 2002 Memorandum of Decision, the Probate Court rejected the Debtor's position, stating "'[i]f it should turn out that Mr. LiBassi did what is alleged, that would not be a reason for [Lillian] to be excused from paying [Edward's] reasonable fees and costs.  The funds paid by [Lillian] for [Edward]'s reasonable fees and costs will be available to reimburse the escrowed funds if necessary.'" Id. at 4.  The Probate Court ordered the Debtor to pay Edward the sum of $37,676.25 for attorney's fees plus $1,504.66 for costs.  It directed that payments be first applied to the $15,000 trust fund established pursuant to the January 22, 2002 judgment and then to the separate bank account to bring both repositories up where they would have been if the accounts had been diminished only by authorized disbursements.  The Probate Court directed that any additional payments made by the Debtor were to be applied to the money judgment in favor of Edward in the sum of $32,630 with the balance, if any, to be held by Edward's new attorney, James E. Small, "pending completion of proceedings now pending regarding J. Douglas LiBassi and the further order of the court." Id. at 5.  The Probate Court ordered the Debtor to make payments on or before June 7, 2002.

4

Over five years later, the Probate Court, in its July 31, 2007 decision, observed that LiBassi was disbarred by a judgment of the Supreme Judicial Court on July 12, 2006 "in part because he used funds of the parties he was holding in escrow in this case for his own purposes." It also observed that the Debtor had paid nothing toward the judgment or attorney's fees. Id.

A few months before she filed her bankruptcy case, the Debtor, relying upon Kourouvacilis v. Amer. Fed. of State, County and Mun. Employees, 65 Mass. App. Ct. 521 (2006), filed a Motion for Relief from Judgment, which was the subject of the Probate Court's July 31, 2007 decision. She sought relief from the requirement that she pay Edward's attorney's fees, as well as from the restraint on her use of her retirement fund - - a restraint which precludes her from accessing monies in her Thrift Savings Plan "'until such time as all sums owed to the plaintiff-in-counterclaim under [the] judgment have been paid in full.'" O'Neal v. Morgan, Slip Op. at 5. In rejecting the Debtor's position and denying her motion, the Probate Court observed that any money the Debtor "pays towards Edward's legal fees are not going to be going to Mr. LiBassi until the trust and special fund set up in the Judgment have been fully funded, Edward has received the full amount of his judgment, all with post judgment interest, and then only if, after hearing, the Court so orders." Id. at 6. The Probate Court explained:

> Kourouvacilis, and the cases it cites, are careful not to permit any unjust
> enrichment. Lillian will be unjustly enriched, at the expense of her elderly
> parents and at the expense of Edward, if she is able to avoid paying what she
> owes while she holds on to her retirement funds. The fact that she grows
> older and needs the funds is not legally relevant. In light of Kourouvacilis, it
> does not appear that Mr. LiBassi will be able to collect any of the fees Lillian

may pay other than, perhaps, as reimbursement for funds he may have paid to Edward in settlement of litigation in the Superior Court Department.

Id. at 6.

Although the Probate Court succinctly summarized the protracted proceedings pending before it, it did not address three matters affecting LiBassi's Motion for Relief from Stay. The first matter, an assignment dated June 22, 2006 between Edward and LiBassi, preceded LiBassi's disbarment by about three weeks. The assignment, which was filed in a separate proceeding captioned, Morgan v. LiBassi, No. SUCV2005-00368, appears in a pleading bearing the heading of the Superior Court Pro Se Mediation Program and is captioned, "Mediation Agreement." The hand-written agreement provided the following:

> We, the undersigned, acting in good faith, agree to abide by the terms of the following agreement:
>
> 1) The parties acknowledge that the defendant has paid $15,000.00 to plaintiff's counsel to restore the trust fund established by the Probate Court Judgment in O'Neal v. Morgan, 99E-0035.
>
> 2) The defendant agrees to pay an additional $45,000.00 to plaintiff in exchange for the following:
>
>> a) Release of all claims by Ed Morgan individually and as trustee from the beginning of time to now; and
>>
>> b) Assignment of any and all rights Ed Morgan has or may have against Lillian O'Neal for the award of attorney's fees in the Probate action mentioned herein.
>
> 3) Parties further agree that the counterclaims are dismissed without prejudice.
>
> 4) The attachment on defendant's property shall be dissolved.
>
> 5) Plaintiff acknowledges he understands this agreement and has discussed

6

this matter with his attorney.

The second matter which the Probate Court did not mention pertains to an attachment obtained by LiBassi. On September 28, 2006, in Case No. 99E 0035,[1] LiBassi filed a complaint for contempt. On October 30, 2006, he obtained an attachment of the Debtor's "interest in the amount of $65,000.00 (sixty-five thousand dollars)[sic]." The ruling appears in a pleading captioned, "Findings and Ex Parte Order for Approval of Attachment." It contains no reference to specific real or personal property subject to attachment, and LiBassi represented that he did not record the attachment until after the Debtor transferred two properties located in Hyde Park, Massachusetts to the Dietz Realty Trust.

The final matter, which the Probate Court did not mention in its July 31, 2007 decision, also pertains to LiBassi's complaint for contempt, namely a scheduling order which the Probate Court issued on the same day it issued its July 31, 2007 Memorandum of Decision. In that order, the Probate Court scheduled a status conference for November 14, 2007 and a trial for January 29, 2008 provided "the bankruptcy stay is lifted."

B. The Debtor's Bankruptcy Case

_____As noted above, the Debtor filed a Chapter 13 petition on June 6, 2007. With respect to her assets, on Schedule B-Personal Property, she listed an interest in a federal Thrift

---

[1] Although the Probate Court found that LiBassi demonstrated a reasonable likelihood of success on the merits and that there was a clear danger that the Debtor, if notified in advance of attachment of his property would remove it from the Commonwealth or conceal or convey it, the Probate Court did not identify any specific property subject to attachment in its order.

Savings Plan which she valued at $120,000. She claimed her interest in her pension as exempt pursuant to 11 U.S.C. § 522(b)(3)(C) on Schedule C-Property Claimed as Exempt.[2] On Schedule D-Secured Claims, the Debtor indicated that she was co-obligor with respect to first and second mortgages encumbering two properties: one located at 9 Dietz Road, Hyde Park, Massachusetts, and the other located at 60 Leighton Road, Hyde Park, Massachusetts. In her Statement of Financial Affairs, the Debtor disclosed that she purchased the properties in August of 2005 for her daughters, that she transferred them to the Dietz Realty Trust on October 6, 2005, and that "both properties are in foreclosure." On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed Edward with a claim in the sum of $37,280, not $32,630 as set forth in the Probate Court's July 31, 2007 decision, and LiBassi, not Edward, with a claim in the sum of $48,273, although the total award for attorney's fees and costs was $39,180.91, excluding interest, as set forth in the Probate Court's decision.

Both Edward and LiBassi filed proofs of claim. Edward filed an unsecured claim based upon the January 22, 2002 judgment in the sum of $53,950. LiBassi filed a secured claim in the sum of $65,000 listing real estate as collateral for the claim. He listed the total claim at $74,000 referencing the Probate Court's May 13, 2002 decision with respect to

---

[2] Despite the Debtor's reliance upon § 522(b)(3)(C), the Debtor elected the federal exemptions set forth in 11 U.S.C. § 522(b)(2). On August 15, 2007, the Debtor filed a Motion to File Pre-Confirmation Amended Schedule C. As cause, she cited a scrivener's error in the statutory reference for her pension. On amended Schedule C, she referenced "11 U.S.C. § 522(d)(10)(E) (12)." LiBassi filed an objection to the Debtor's motion.

attorney's fees and statutory interest at 18% pursuant to "G.L. 231-frivolous action."[3]

### C. LiBassi's Motion for Relief from Stay

In his Motion for Relief from Stay, LiBassi represented that in September of 2006, after the execution of the assignment, he filed a complaint for contempt against the Debtor and obtained an attachment. Moreover, he represented that the Debtor filed her bankruptcy petition during the discovery phase of the contempt proceeding. He asserted that "cause" exists under 11 U.S.C. § 362(b)(1) for him to proceed with the contempt action, although he stated that he is not seeking to collect any sums from the Debtor at this time. LiBassi stated that the possibility of fraud by the Debtor combined with the Debtor's refusal to provide relevant documents constitute "cause" to lift the automatic stay and allow the Contempt action to proceed." LiBassi also referenced the Debtor's Thrift Savings Plan, which he maintained "was attached by the Probate Court, as a pension account is [sic] exempt from the bankruptcy estate."

## III. DISCUSSION

Section 362(d)(1) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property . . . ." 11 U.S.C. § 362(d)(1). In Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 31 (1st Cir. 1994), the First Circuit stated: "[t]hat the statute sets forth certain grounds for relief and no others indicates Congress' intent that the issues decided by a bankruptcy

---

[3] See Mass. Gen. Laws ch. 231, § 6F. Only eleven proofs of claim were filed and the bar date for filing claims has passed.

court on a creditor's motion to lift the stay be limited to these matters." In <u>Grella</u>, the First

Circuit, in determining that an order granting relief from stay did not have preclusive effect

on a trustee's preference counterclaim, determined that "the hearing on a motion for relief

from stay is meant to be a summary proceeding." <u>Id.</u> (citing <u>Matter of Vitreous Steel Prds.</u>

<u>Co.</u>, 911 F.2d 1223, 1232 (7th Cir.1990)). It added:

> As a matter of law, the only issue properly and necessarily before a
> bankruptcy court during relief from stay proceedings is whether the movant
> creditor has a colorable claim; thus, a decision to lift the stay is not an
> adjudication of the validity or avoidability of the claim, but only a
> determination that the creditor' claim is sufficiently plausible to allow its
> prosecution elsewhere."

<u>Grella</u>, 42 F.3d at 34.

Under this standard, the Court finds that LiBassi has failed to set forth a colorable

claim warranting relief from the automatic stay. Accordingly, the Court denies LiBassi's

Motion for Relief from the Automatic Stay. The Debtor's failure to produce documents and

the *possibility* that she may have committed fraud are not grounds for granting relief from

stay under the circumstances of this case. LiBassi has remedies under the Bankruptcy Code

to address the Debtor's conduct. Federal Rules of Bankruptcy Procedure 2004 and 4007(d)

govern the examination of the Debtor and the production of documents, and the deadline

for filing complaints under 11 U.S.C. § 523, respectively.[4]  Thus, if LiBassi seeks the

---

[4] The deadline for filing complaints under 11 U.S.C. § 523 was September 24,
2007. LiBassi filed an adversary proceeding against the Debtor on that date seeking,
*inter alia*, the dismissal of her bankruptcy case, a determination that the debt owed to
him as a result of Edward's assignment is nondischargeable, that he is a secured
creditor, and the denial of the Debtor's claimed exemption in her Thrift Savings Plan.

10

production of records from the Debtor, he can file a motion for a Rule 2004 examination.

Similarly, if, as he asserts, the Debtor's obligation to him was the result of fraud or other

misconduct, the Court will make a determination as to the dischargeability of the debt in

the context of the adversary proceeding

LiBassi failed to establish that he obtained a lien encumbering the Debtor's interest

in the Hyde Park properties or that he is entitled to adequate protection. Although he

produced a document captioned, "Findings and Ex Parte Order for Approval of

Attachment" dated October 30, 2006, he did not establish that he recorded the attachment

at the time the Debtor owned real property in Hyde Park, Massachusetts or that the Debtor

owned the real property on October 30, 2006. Indeed, in her Statement of Financial Affairs,

she represented that the real property located in Hyde Park, Massachusetts was held in

trust at the time LiBassi obtained his attachment.

LiBassi also failed to establish that the attachment he procured from the Probate

Court encumbered the Debtor's interest in her Thrift Savings Plan. The nature of the Thrift

Savings Plan and the provisions of the Bankruptcy Code suggest that the Debtor's interest

in her Thrift Savings Plan is not subject to attachment, *see* 5 U.S.C. § 8437(e),[5] and is either

---

[5] Section 8437(e) provides in relevant part:

(e)(1) Subject to subsection (d) and paragraphs (2) and (3), sums in the
Thrift Savings Fund credited to the account of an employee, Member,
former employee, or former Member may not be used for, or diverted to,
purposes other than for the exclusive benefit of the employee, Member,
former employee, or former Member or his beneficiaries under this
subchapter.

11

exempt or not property of the estate. *See* In re Gill, No. 07-00358, 2007 W.L. 2990564 (Bankr. D. D.C. October 11, 2007). LiBassi failed to cite any authorities to support his position that he could or did attach the Debtor's interest in her Thrift Savings Plan.

With respect to LiBassi's assertion that he is owed $75,080.91 as of August 7, 2007, a sum which includes both pre- and post-petition interest on the principal amount of the judgment assigned to him by Edward, namely $39,108.91, the Court observes that the Debtor, on September 21, 2007, filed an objection to LiBassi's secured proof of claim. A hearing on the Debtor's objection to LiBassi's proof of claim, in conjunction with a hearing

---

(2) Except as provided in paragraph (3), *sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process.* For the purposes of this paragraph, a loan made from such Fund to an employee or Member shall not be considered to be an assignment or alienation.

(3) Moneys due or payable from the Thrift Savings Fund to any individual and, in the case of an individual who is an employee or Member (or former employee or Member), the balance in the account of the employee or Member (or former employee or Member) shall be subject to legal process for the enforcement of the individual's legal obligations to provide child support or make alimony payments as provided in section 459 of the Social Security Act (42 U.S.C. 659) or relating to the enforcement of a judgment for physically, sexually, or emotionally abusing a child as provided under section 8467(a). For the purposes of this paragraph, an amount contributed for the benefit of an individual under section 8432(c)(1) (including any earnings attributable thereto) shall not be considered part of the balance in such individual's account unless such amount is nonforfeitable, as determined under applicable provisions of section 8432(g).

5 U.S.C. § 8437(e)(emphasis supplied).

on LiBassi's objection to the Debtor's Motion to Amend Schedule C provide the

appropriate context for a determination of what monies, if any, the Debtor owes LiBassi

and whether LiBassi may assert his claim against the Thrift Savings Plan.[6]

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order denying LiBassi's Motion

for Relief from Stay. The Court shall also enter pretrial orders with respect to the contested

matters involving the Debtor's objection to his proof of claim and LiBassi's objection to her

Motion to Amend Schedule C.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated:   November 27, 2007
cc: J. Douglas LiBassi, James E. Small, Jr. Michael S. Kalis, Esq., James E. Small, Jr., Chapter
13 Trustee

---

[6] The Probate Court's order of January 22, 2002 may have created an equitable
lien in favor of Edward. The judgment provided:

> The defendant-in-counterclaim Lillian Mary Morgan O'Neal is enjoined
> from withdrawing, transferring, encumbering or otherwise depleting the
> assets contained in her thrift savings plan established through the United
> States Postal Service, until such time as all sum owed to the plaintiff-in-
> counterclaim under this judgment have been paid in full.

O'Neal v. Morgan, No. 99E 0035, Slip Op. at 4. This Court makes no ruling on whether
such a lien was created and whether it can be avoided as impairing an exemption. *See
generally* In re Linehan, 341 B.R. 110 (Bankr. D. Mass. 2006).

13